RADER, Circuit Judge.
 

 Servidone Construction Corporation (Ser-vidone) encountered unexpected site conditions when building an earthen dam for the United States Army Corps of Engineers (the Corps). The United States Claims Court held the Corps liable for increased costs caused by site conditions.
 
 Servidone Constr. Corp. v. United States,
 
 19 Cl.Ct. 346 (1990). This court affirms.
 

 
 *861
 
 BACKGROUND
 

 The Claims Court presented thorough findings of fact.
 
 Servidone,
 
 19 Cl.Ct. at 349-56. This opinion therefore supplies only a brief factual summary.
 

 In September 1981, the Corps awarded Servidone a contract to construct an embankment, a spillway, outlet works, and several roads on an earthen dam near Dallas-Fort Worth. Servidone’s winning bid was $25,781,338.18.
 

 Servidone began work in May 1982. Over the next two years, Servidone encountered many problems due to differing site conditions. After incurring costs well beyond its bid price, Servidone filed a certified claim for equitable adjustment of the contract on March 1, 1984. Servidone did not complete the contract work until August 1985.
 

 On June 4, 1984, Servidone filed suit under the Contract Disputes Act (CDA), 41 U.S.C. § 609(a)(1) (1982), in the Claims Court. Servidone complained that the Coiqjs breached an implied duty to provide adequate information for contract performance (Type I differing site condition). Ser-vidone also complained that it encountered unusual soil conditions covered by the contract’s differing site condition clause (Type II differing site condition). Finally, Servi-done complained that the Corps caused delays by excessive quality assurance testing.
 

 The Claims Court found the Government liable for Servidone’s increased costs caused by the Type II differing site condition. The Claims Court computed damages with the total cost method.
 
 Servidone,
 
 19 Cl.Ct. at 384. The total cost method derives damages as the difference between a contractor’s actual costs and its original bid.
 
 Phillips Constr. Co. v. United States,
 
 394 F.2d 834, 840 n. 8, 184 Ct.Cl. 249 (1968). The Claims Court determined that Servidone incurred $23,703,582.00 in costs above its estimated costs or bid. However, the Claims Court also found that Servidone bid too low. To compensate for Servidone’s unreasonably low bid, the trial court substituted a reasonable bid in the damages computation. This substitution reduced Servidone’s claimed costs by $9,262,459.00. These findings produced an award to Servidone of $14,441,123.00. The trial court awarded Servidone interest on this sum from the date the Government contracting officer received Servidone’s certified claim. The Claims Court rejected Servidone’s request for recovery of over $13 million in interest on borrowings to cover the additional performance costs.
 

 On appeal, the Government questions both the damages and interest awards. On cross-appeal, Servidone questions the court’s substitution of a higher bid for Ser-vidone’s bid under the total cost method. Servidone also challenged the Claims Court’s denial of $13 million in interest on borrowings.
 

 DISCUSSION
 

 To receive an equitable adjustment from the Government, a contractor must show three necessary elements—liability, causation, and resultant injury.
 
 Wunderlich Contracting Co. v. United States,
 
 351 F.2d 956, 968, 173 Ct.Cl. 180 (1965). Servidone presented causation evidence on three theories, one of which—the Type II differing site condition—the trial court sustained. This court discerns no basis for determining that the Claims Court clearly erred in this finding of liability.
 

 To show the amount of injury, Servidone presented evidence under the total cost method.
 
 Servidone,
 
 19 Cl.Ct. at 384. Under this method, the contractor must show: (1) the impracticability of proving actual losses directly; (2) the reasonableness of its bid; (3) the reasonableness of its actual costs; and (4) lack of responsibility for the added costs.
 
 WRB Corp. v. United States,
 
 183 Ct.Cl. 409, 426 (1968). Although finding Servidone’s bid unreasonable, the Claims Court awarded damages.
 
 Servidone,
 
 19 Cl.Ct. at 384-85. In doing so, the Claims Court employed a modified total cost method. This modified method substituted a reasonable bid amount for Servidone’s original estimate.
 

 A trial court must use the total cost method with caution and as a last resort. Under this method, bidding inaccuracies
 
 *862
 
 can unjustifiably reduce the contractor’s estimated costs. Moreover, performance inefficiencies can inflate a contractor’s costs. These inaccuracies and inefficiencies can thus skew accurate computation of damages. Despite this risk, this court's predecessor condoned the total cost method in those extraordinary circumstances where no other way to compute damages was feasible and where the trial court employed proper safeguards.
 
 Great Lakes Dredge & Dock Co. v. United States,
 
 119 Ct.Cl. 504, 559, 96 F.Supp. 923, 926 (1951),
 
 cert. denied,
 
 342 U.S. 953, 72 S.Ct. 624, 96 L.Ed. 708 (1952);
 
 Boyajian v. United States,
 
 423 F.2d 1231, 1241, 191 Ct.Cl. 233 (1970).
 

 The Claims Court found that Servidone met the four-part test and thus approved the total cost method in this case.
 
 Servidone,
 
 19 Cl.Ct. at 384. The Claims Court granted Servidone a recovery under the modified total cost method:
 

 [T]he total cost approach was used as “only a starting point" with such adjustments thereafter made in such computations as allowances for various factors as to convince the court that the ultimate, reduced, figure fairly represented the increased costs the contractor directly suffered from the particular action of defendant which was the subject of the complaint.
 

 Boyajian,
 
 423 F.2d at 1240 (citation omitted);
 
 see also, MacDougald Constr. Co. v. United States,
 
 122 Ct.Cl. 210 (1952). The Claims Court modified the total cost method to account for Servidone’s bid inaccuracies. The Claims Court took extensive testimony to determine a reasonable bid amount. This court discerns no clear error in the trial court’s substitution of a reasonable amount for Servidone’s bid under the total cost method.
 

 The Claims Court also considered the extent to which Servidone was responsible for added costs.
 
 Servidone,
 
 19 Cl.Ct. at 386. In particular, the court considered Servidone’s inexperience with the highly plastic soils at the work site. The trial court then assessed appropriate overhead, profit, and equipment costs. This assessment included a correct application of the contract provision governing equipment costs. After exhaustive testimony, the trial court reached its findings about Servi-done’s actual costs, in which this court discerns no clear error. In sum, the Claims Court carefully found facts and correctly applied the law in a rare case justifying the total cost method.
 

 Under 41 U.S.C. § 611 (1982) (Section 12 of the CDA), the Claims Court awarded Servidone interest on its damages from the date the contracting officer received Servidone’s claim in March 1984. Section 611 states:
 

 Interest on amounts found due contractors on claims shall be paid to the contractor from the date the contracting officer receives the claim pursuant to Section 605(a) of this title from the contractor until payment thereof.
 

 This language clearly sets a date from which to compute interest on awards.
 

 At the time it filed a proper claim, Servidone had yet to incur the total costs which it later recovered. Nonetheless Section 611 awards interest on any amounts later “found due ... from the date the contracting officer receives the claim.” This language sets a single, red-letter date for interest on all amounts found due by a court without regard to when the contractor incurred the costs.
 
 See Fidelity Constr. Co. v. United States,
 
 700 F.2d 1379, 1385 (Fed.Cir.), ce
 
 rt. denied,
 
 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983).
 

 The CDA’s legislative history confirms Congress’s reasons for setting a red-letter date for interest. During the legislative process, the Senate’s version of the CDA mandated that interest would run from the time the claim accrued or the additional costs were incurred, whichever was later. S.Rep.No. 95-1118, 95th Cong., 2d Sess. 32,
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News 5235, 5266. Congress declined to adopt this language. Instead, the Senate majority leader inserted in the record a prepared explanation of Congress’s reasons for preferring the enacted version of Section 611:
 

 
 *863
 
 Section 12, Interest, is amended to address the concerns expressed by the executive agencies as well as the Armed Services Committee and the Justice Department that the determination as to “the date the claim accrues” could cause problems in defining the actual date when interest should start. There was added concern that contractors might delay submission of claims, thus not allowing the procuring agency the opportunity to review the claim at an early stage and possibly disposed [sic] of it. Because of these concerns, Section 12 has been amended. ... This will provide a specific date from which interest will be paid and serve as an incentive for contractors to submit claims as soon as they are identified.
 

 124 Cong.Ree. S36267 (1978)
 
 *
 
 . This passage explains Congress’s reasons for adopting an objective, bright line standard. Thus, Section 611’s standard for interest accrual effectively advances some of the main policies of the CD A—to expedite dispute resolution and to ensure fair and equitable treatment to contractors. 41 U.S.C. § 601 note (1988). The Claims Court correctly set the date from which interest on Servidone’s damages should accrue.
 

 The Claims Court also correctly denied Servidone’s claim to interest on sums borrowed to cover excess costs. As the Claims Court fully discussed,
 
 Servidone,
 
 19 Cl.Ct. at 383, a trial court may not award interest on monetary claims against the Government unless specifically authorized by statute or contract. 28 U.S.C. § 2516(a) (1982);
 
 Brookfield Constr. Co. v. United States,
 
 661 F.2d 159, 165, 228 Ct.Cl. 551 (1981).
 

 Servidone’s contract specifically bars recovery of this interest.
 
 Servidone,
 
 19 Cl.Ct. at 383. Moreover, no statute authorizes it. The CDA contains an explicit statutory grant for the collection of interest on a recovery under a claim, 41 U.S.C. § 611, but has no separate provision for recovery of interest on borrowings. Consequently, this court affirms the Claims Court’s ruling that Servidone cannot recover interest on borrowings.
 

 AFFIRMED.
 

 *
 

 This explanation has the hallmarks of a joint product. In the waning days of a session, Congress lacks time to draft and publish official reports. In fact, Congress often lacks time to convene a formal conference to reconcile differing bills from the two houses. In such instances, the parties to negotiations between the houses will often draft an explanation of their compromises. A Senate or House leader will then insert this explanation into the record to take the place of a more formal report.